UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 09-174-GWU

TAMMY LOGAN, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

1

09-174  Tammy Logan

3.  The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.

4.  At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5.  If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

09-174  Tammy Logan

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

3

09-174  Tammy Logan

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

09-174  Tammy Logan

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

09-174  Tammy Logan

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

09-174 Tammy Logan

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Tammy Logan, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative disc disease of the lumbar spine, with no herniated nucleus pulposus and minimal stenosis, and an "anxiety disorder-chronic Xanax user." (Tr. 18). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy, and accordingly was not entitled to benefits. (Tr. 23-7). The Appeals Council declined to review, and this action followed.[1]

At the administrative hearing, the ALJ asked the VE whether the plaintiff, a 44-year-old woman with a high school equivalency education and work experience as a school bus driver and assembler, could perform any jobs if she were limited to "light" level exertion with no sitting or standing greater than 30 minutes at a time, and also had the following non-exertional restrictions. She: (1) could not climb or crawl; (2) could occasionally stoop, bend, and crouch; (3) could have no exposure to temperature extremes, or concentrated levels of pulmonary irritants such as dust,

---

[1] The Appeals Council had remanded a previous ALJ decision. (Tr. 316-35).

7

fumes, gases, or noxious odors; (4) could not work at heights, or around vibrations or hazardous machinery; (5) could not operate foot controls with her right dominant lower extremity; (6) was limited to work involving simple, one- to two-step instructions in an object-focused environment, with occasional and superficial interaction with coworkers, supervisors, and the general public and to low stress work not requiring production or quota rate performance; and (7) had a "marked" or "seriously limited but not precluded" ability to tolerate the stress and pressure of day-to-day employment and to respond appropriately to coworkers, supervisors, and work pressures. (Tr. 588-91). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 589-91).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Although the plaintiff originally alleged disability due to a herniated disc in her lower back, high blood pressure, a heart valve problem, and nervousness (Tr. 107), she challenges only the ALJ's mental conclusions on appeal.

The plaintiff testified that she had received various medications from general practitioners for nervousness, most frequently Xanax. (Tr. 573). At the time of the August 6, 2008 hearing, she had been off Xanax because her family physician, Dr.

09-174 Tammy Logan

Bernard Moses, had lost his ability to prescribe it. (Tr. 574). She had made an appointment with a mental health clinic, but was unable to keep it because of lack of transportation. (Tr. 587).

Opinions regarding the plaintiff's mental functioning were provided by one-time psychological examiners to whom the plaintiff was referred by the state division of disability determinations, by two non-examining psychological reviewers, and, to a certain extent, by an examining neurologist.

Psychologist Crystal Sahner examined the plaintiff in July, 2006. The plaintiff gave a history of being married at age 14 and having been married a total of nine times, with her last divorce in 2003. (Tr. 211-12). She claimed to be physically, sexually, emotionally, and verbally abused as a child. (Tr. 211). She indicated that the reason she was not continuing her job as a bus driver was back problems, however. (Tr. 212). She referred to seeing Drs. Acob, Maxey, and Moses at the time of the hearing, and her medications included Xanax and Cymbalta. She felt that her depression and anxiety problems had increased since a recent total hysterectomy, which had resulted in such symptoms as decreased interest in daily activities, crying spells for no reason, worry, and palpitations. (Tr. 213). In terms of addictive substances, the plaintiff indicated that she smoked one pack of cigarettes per day, but took pain medication as prescribed by her physician. (Id.). On examination, Dr. Sahner noted that the plaintiff exhibited psychomotor

retardation, began crying while performing subtraction, and otherwise exhibited a sad mood and teared up often. (Tr. 215). She felt that the plaintiff had more difficulty with concentrating than with her actual memory, and opined that she put forth her best effort. (Tr. 216). Dr. Sahner diagnosed a depressive disorder and an anxiety disorder, with a current Global Assessment of Functioning (GAF) score of 50. (Tr. 216-17). A GAF score in this range reflects serious symptoms or any serious impairment in social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34. Dr. Sahner opined that the plaintiff would have a "marked" impairment in her ability to concentrate, to interact appropriately with fellow workers and supervisors, to tolerate the stress and pressure of day-to-day employment, and to sustain attention and concentration towards the performance of simple, repetitive tasks. (Tr. 217).

Subsequently, the plaintiff was examined on May 7, 2008 by Jessica Huett, Psy.D. (Tr. 474). The plaintiff gave her history, which was somewhat amended in that she stated she had stopped working as a school bus driver because of both back and nerve problems. (Tr. 474-5). She reported that she was still taking Cymbalta and generic Xanax. She described irregular sleep, poor appetite, and a desire to be left alone. (Tr. 475). She stated that she could manage self care adequately but not always on a daily basis. The psychologist found the plaintiff to be tearful in the evaluation, "distractible," and with "scattered" concentration, which

09-174  Tammy Logan

was interfered with by pain at times. (Id.). Her memory appeared to be normal, although she appeared to have gaps in insight and deficient coping ability. (Tr. 476). The psychologist diagnosed a depressive disorder, post traumatic stress disorder, and a pain disorder due to psychological factors and back problems. (Id.). She assigned a current GAF score of 45-50, and opined that the plaintiff would have a "marked" limitation in her ability to tolerate the stress and pressure of day-to-day employment, and a "moderate to marked" limitation in her ability to respond appropriately to supervision, coworkers, and work pressures in a work setting. (TR. 477). More than a week later, the psychologist completed a residual functional capacity assessment form which appeared to assign somewhere between a moderate and marked limitation in the plaintiff's ability to carry out complex instructions, make judgments on complex work-related decisions, interact appropriately with the public, supervisors, and coworkers, and respond appropriately to usual work situations and changes in a routine work setting. (Tr. 478-80).

Another source, Neurologist Arden Marc Acob, examined the plaintiff in 2006 and 2008 for complaints of back pain (e.g., Tr. 181-4, 267-9, 485-6). In an August, 2008 functional capacity assessment, Dr. Acob noted, among other items, that the plaintiff's pain would result in her being unable to concentrate on the job. (Tr. 532).

A state agency psychologist, Dr. Laura Cutler, completed a mental residual capacity assessment on July 28, 2006, well before the Huett or Acob opinions had

11

09-174  Tammy Logan

been submitted.  Dr. Cutler opined that the plaintiff would have a moderately limited ability to maintain attention and concentration and respond appropriately to changes in the work setting.  (Tr. 235-6).  She explained that the medical source statement by Dr. Sahner was given little weight because she did not feel it was supported by the overall case findings.  Dr. Cutler indicated that the "tearful depressed person with poor concentration" seen by Dr. Sahner was not seen elsewhere in the record, because physical examiners described her as alert and cooperative and with no signs of mood disturbance or distress.  (Tr. 237).  She summarized that the plaintiff was able to understand and remember simple and complex instructions, tolerate coworkers and supervisors, sustain attention for extended periods of two-hour segments for simple tasks, and adapt to changes as needed "within the above parameters."  (Id.).  Another state agency reviewer, Dr. Ilze Sillers, affirmed this assessment in November, 2006.  (Tr. 295-7).

     The plaintiff specifically challenges the rejection of the Sahner and Huett opinions by the ALJ, noting that the rationale given by the ALJ was that the "examiners were not fully informed of the plaintiff's drug history and could not, therefore, apply that factor in assessing function."  (Tr. 24).[2]  The plaintiff had

---

[2] The court notes, in this regard, that it has been critical for many years of the defendant's propensity to refer claimants for consultative evaluations without providing any treatment records for the examiner's review.  To go to the expense of a consultative examination and then discount the conclusions of the examiner because the examiner was not aware of factors that had already been introduced into the medical evidence is,

12

09-174  Tammy Logan

admitted at the hearing that at one point she was seeking narcotic pain medications from Dr. Jackie Maxey and Dr. Bernard Moses simultaneously.  (Tr. 583).  The plaintiff asserted that she did this because Dr. Moses was out of town at the time.  (Id.).  The office notes of Dr. Moses appear to indicate, however, that he detected her "doctor shopping" in May, 2006, after running a KASPER report.  (Tr. 201).  On a subsequent visit in the same month, he recorded that the plaintiff herself stated she was not getting enough pain medication, so was getting it from two doctors.  (Tr. 198).  Dr. Moses instructed her to obtain her opioid medication from Dr. Maxey.  (Id.).  However, he subsequently resumed prescribing Percocet in October, 2006 after the plaintiff reported that she could not be treated at a pain clinic.  (Tr. 310).  She had reported to Dr. Acob that she had been denied treatment by Dr. Lingreen because of her history of receiving narcotic pain medication from two physicians.  (Tr. 181).  Counsel for the plaintiff states that the ALJ had noted at the hearing that the plaintiff's "doctor shopping is in the past" and there was no evidence of any such misbehavior after the alleged onset date of May 23, 2006.  However, it appears in the transcript that the ALJ was asking the plaintiff if her doctor shopping was in the past in order to clarify her testimony, and was not stating a conclusion.  (Tr. 584).  As consultative examiners, Sahner and Huett were not entitled to the deference of

---

to say the least, inefficient and unproductive.  While these decisions may not be within the power of the ALJ to personally remedy, it would be possible for the ALJ to supply additional records to the examiner and obtain an updated opinion.

13

09-174  Tammy Logan

treating sources, and the Sixth Circuit has upheld an ALJ's decision to disregard the opinion of an uncontradicted one-time examiner where there were sufficient grounds to do so. Her v. Commissioner of Social Security, 203 F.3d 388, 390-1 (6th Cir. 1999).

In the present case, the ALJ specifically cited only the "doctor shopping" issue. While it is not a foregone conclusion that being aware of the situation would have changed the consultants' opinions, it does reflect poorly on the plaintiff's credibility and the ALJ could have concluded that the results of the examinations were unreliable.

More problematic is the manner in which the ALJ dealt with the opinions of the state agency reviewers. 20 C.F.R. §§ 404.1527(f) and 416.927(f) provide that while an ALJ is not bound by findings made by state agency consultants, these sources are "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation," and the ALJ "must consider" their findings and explain in the decision the weight they are being given. In the present case, the ALJ merely stated that he agreed with the conclusion of the state agency reviewers that the plaintiff was not disabled and made the general statement that "[a]ny greater or less restrictive limitations . . . are predicated on new medical evidence as well as the hearing testimony." (Tr. 29). It appears that the ALJ made every effort to include the restrictions given by the psychological reviewers in noting their summary

09-174  Tammy Logan

conclusions, but a recent decision by the Sixth Circuit emphasizes that speed and pace-based restrictions given by the ALJ should reflect a psychologist's conclusions that a claimant can sustain attention for two-hour segments.  The Sixth Circuit specifically held that a hypothetical question limiting a claimant to "simple, repetitive-type jobs in a non-public work setting" did not reflect the restrictions of two-hour segments during an eight-hour day.  <u>Ealy v. Commissioner of Social Security</u>, No. 09-5451, 2010 WL 394241 (6th Cir. Jan. 12, 2010), at 18.  Without this, the claimant's limitations were not fully conveyed to the vocational expert.  Since the same language was used by Dr. Cutler in the present case, and the limitation was not included in the hypothetical, a remand will be required for further vocational testimony.  A consistent order and judgment will enter this day.

      This the 18th day of February, 2010.

**Signed By:**
<u>**G. Wix Unthank**</u>    *GWU*
**United States Senior Judge**